IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

GREGORY BENNETT,                                              OPINION AND ORDER

          Petitioner,

                                                                   14-cv-392-bbc
                                                                     06-cr-126-bbc

    v.

UNITED STATES OF AMERICA,

          Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Petitioner Gregory Bennett has filed a motion for post conviction relief under 28 U.S.C. § 2255, contending that he was denied the effective assistance of counsel at trial by the two lawyers who represented him at various stages of the legal proceedings against him. The facts of his case belie his contentions. He has fallen far short of showing constitutionally ineffective representation by either his first trial counsel, who represented him when he was first indicted, or by his second counsel, who represented him years later, after he had absconded and been re-arrested. The fact that he was found guilty and sentenced to a lengthy term of imprisonment is the consequence of the strength of the evidence against defendant, not of either counsel's ineffectiveness.

      Petitioner also contends that his guilty plea was invalid because it was not knowing and intelligent, but this contention can be ignored because it rests entirely on petitioner's allegations about his second counsel's ineffectiveness.

1

RECORD FACTS

Petitioner Gregory Bennett was charged in four counts of a six-count indictment returned on June 12, 2006. One count charged conspiracy to possess with intent to distribute cocaine; a second charged possession with intent to distribute crack cocaine; a third charged possession with intent to distribute ecstacy; and a fourth charged possession with intent to distribute marijuana.

The charges against petitioner grew out of an investigation of drug dealing by Gerardo Valtierra, Timothy Clark, Quincy Clark (Timothy's son), and a second group that included Lawrence Green, Darius Kelly and petitioner. Both groups dealt drugs in Chicago and elsewhere; both groups used Amy Hill, Timothy Clark's girl friend, to transport drugs.

On January 27, 2006, Quincy Clark was arrested in Madison, Wisconsin, for distributing cocaine. He agreed to cooperate with the arresting officers. At their direction, he called Hill and ordered 180 grams of crack cocaine, which Hill obtained from Green. She also agreed to transport drugs for petitioner, including 33.9 grams of crack cocaine, ecstacy pills and marijuana entrusted to her by petitioner and Kelly. Hill drove the drugs to Madison, where she was met by law enforcement at an Arby's restaurant and arrested. She too agreed to cooperate. Petitioner tried calling her twice that evening to arrange to pick up the drugs she had brought to Madison so that he and Kelly could sell them in Madison, leaving a message after the second call. After midnight, he left two threatening calls on Hill's voice mail.

The agents persuaded Hill to return to Chicago and be fitted with a recording device

so that she could record her meeting with Green to deliver $5000 in DEA funds to him, purportedly proceeds of the sale of the 180 grams of crack cocaine he had provided her. Hill turned over the money to Green, who told her to drive his car to his cousin's house. She complied and found petitioner and Kelly at the house. Petitioner beat her, burned her with lighted cigarettes and destroyed the recording device the DEA had given her. He then called her purported boyfriend, "Sweet Lou," who was actually DEA agent Lou Gade, and threatened to kill Hill unless "Sweet Lou" delivered $12,000 for the stolen drugs. Some time later, petitioner released Hill; police officers found her and took her to a hospital for treatment for her injuries.

At some time, petitioner retained George Pappas as his attorney. Pappas advised petitioner to make a proffer to law enforcement agents, which he did on March 13, 2006. Before the proffer took place, Pappas reached an agreement with the government that was memorialized in a letter dated March 7, 2006 and signed by Assistant United States Attorney Timothy O'Shea. According to the agreement, the government agreed not to make any direct use of petitioner's statements, but retained the right to make indirect use of the information. Ltr., dkt. #231-2, at 1. In addition, the parties agreed that if petitioner were to give testimony at any trial or hearing inconsistent with his proffer, the government could then use the information from the proffer for any purpose whatsoever. Id. Pappas reviewed the letter with petitioner before the proffer meeting.

Petitioner met with two special agents from the DEA and admitted supplying crack cocaine, ecstacy and marijuana to Hill that she would transport to Madison. He told them

he and Kelly would drive up later, retrieve it from her and start selling it.  He admitted brutalizing Hill by kicking and punching her and flicking burning cigarettes at her. Sometime thereafter, before his scheduled arraignment, petitioner absconded.  More than four years later, in November 2010, he was arrested in Georgia and returned to this district. He retained Beau Brindley to represent him in place of Pappas.

On June 16, 2011, petitioner pleaded guilty to two violations of 21 U.S.C. § 841(a)(1) involving ecstacy and marijuana, on the parties' understanding that the court could take the crack cocaine into consideration as relevant conduct when sentencing him. At sentencing, petitioner argued that he should not be held accountable for the crack cocaine, that the proffer he had made prevented the government from using his admissions about crack cocaine at sentencing, that he should not be given a managerial role enhancement and that he should be given credit for acceptance of responsibility.  He lost all of his arguments.  Under the March 7, 2006 letter from the government, to which Pappas had agreed, petitioner's disavowal of representations he made in his proffer to law enforcement agents relieved the government of any obligation it had under the proffer agreement to comply with the promises made in connection with that agreement.  He was held accountable for the crack cocaine found in Hill's possession when she was arrested; he was found to be an organizer, leader, manager or supervisor in the offense; and he was denied a reduction in his guideline range for acceptance of responsibility in light of his flight from prosecution, his assumption of a false identity and use of a false driver's license.  He was sentenced to 135 months in prison on the ecstacy charge and a concurrent term of 60

months on the marijuana charge.

Petitioner appealed to the Court of Appeals for the Seventh Circuit; the court denied the appeal. United States v. Bennett, 708 F.3d 879 (7th Cir. 2013). He filed this motion for post conviction relief on May 30, 2014, less than one year after final judgment had been entered on his appeal.

OPINION

The only issues petitioner raises in this motion relate to the assistance of his two attorneys. He contends that both of them gave him constitutionally ineffective assistance; the first, by giving him poor advice about making a proffer to law enforcement and the second, by giving him poor advice about entering a plea of guilty.

To succeed on a claim of ineffective assistance, a defendant must prove that his attorney's performance fell below an objective standard of reasonableness *and* that he suffered prejudice as a result. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). It is not enough simply to allege ineffectiveness. A defendant must "establish the specific acts or omissions of counsel that he believes constituted ineffective assistance" and the court can "determine whether such acts or omissions fall outside the wide range of professionally competent assistance." Wyatt v. United States, 574 F.3d 455, 458 (7th Cir. 2009) (citing Coleman v. United States, 318 F.3d 754, 758 (7th Cir. 2003)). If he is challenging the validity of his guilty plea he "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."

Hill v. Lockhart, 474 U.S. 52, 59 (1985). A "mere allegation that he would have chosen a path other than the [one he took] is insufficient by itself to establish prejudice." Wyatt, 574 F.3d at 458 (citing Bethel v. United States, 458 F.3d 711, 718 (7th Cir. 2006)).

Under Strickland, defense counsel are presumed "to have rendered adequate assistance and to have made significant decisions in the exercise of [their] reasonable profession judgment," United States v. Traeger, 289 F.3d 461, 470 (7th Cir. 2002), "unless the defendant presents evidence rebutting that presumption." Id. at 472 (citing Strickland. 466 U.S. at 689-90).


A. Ineffective Assistance of First Counsel

Petitioner alleges that his initial counsel, George Pappas, gave him erroneous advice about two matters: (1) petitioner could get a sentence of as much as life imprisonment and (2) the information petitioner gave law enforcement in a proffer could not be used against him. In addition, he contends that Pappas was ineffective in agreeing to a proffer with law enforcement officers without the involvement of the United States Attorney and without first investigating the credibility of the government's evidence.

The first piece of advice was not erroneous. Pappas would have known that petitioner faced the possibility of being charged as part of a conspiracy and being held responsible for a large amount of crack cocaine, as well as beating a witness. A life term was not improbable. Petitioner says that if Pappas had told him he was not guilty of conspiracy he would never have agreed to the proffer and would not have fled from prosecution. That may be so, but

6

Pappas had no reason to make such a statement to petitioner.  At that early stage of the case, Pappas would not have known the full scope of the evidence against petitioner, but he would have known enough to realize that petitioner's situation was not a good one.  In any case, petitioner has no ground on which to argue that Pappas's advice was not within the range of advice that any effective counsel would have given a client in petitioner's position.

Pappas was also correct when he told petitioner that the information petitioner gave in the proffer could not be used against him.  This was true unless petitioner contradicted his proffer statements in a later proceeding, in which case the government would no longer be bound by its agreement.  Petitioner knew this because he had read the government's letter and gone over it with Pappas.  Pappas affid. & Gov't's Mar. 7, 2006 letter, dkt. #231-2, at 1-3.

Petitioner's reading of the letter refutes his claim that Pappas was ineffective in agreeing to a proffer with law enforcement agents without the involvement of the United States Attorney and in failing to get the United States Attorney to sign off on the agreement, The letter establishes that the United States Attorney *did* sign off on the proffer.  The signed letter undercuts petitioner's argument that if Pappas had obtained the United States Attorney's signature, he could have confirmed that the information in the proffer would never have been used against petitioner.  The United States Attorney made it clear in the letter that the government could use the information from petitioner against him in at least two circumstances:  if he took a position contrary to the information he provided at the proffer and in pursuing investigative leads obtained from the information petitioner

7

provided.

Finally, petitioner alleges that Pappas failed him by not conducting an investigation into the credibility of the actual evidence the government had against petitioner when the proffer agreement was made. Petitioner believes that if Pappas had undertaken a proper investigation, he would have been able to advise petitioner more effectively about agreeing to the proffer. The flaw in this argument is that a lawyer who believes that his client might benefit from entering into a proffer agreement does not have the option of reviewing all the evidence. The government wants new evidence from the proffer, not just information that the accused person has learned from a review of the discovery materials, and it does not want information tailored to what it already knows. Thus, it is unlikely to show its hand before the proffer takes place.

In sum, petitioner has made no showing that Pappas gave him ineffective assistance when he advised petitioner to make a proffer as a way of reducing his chances of receiving a long sentence.

## B. Ineffectiveness of Second Counsel

In 2010, when petitioner was returned to this district to stand trial, he retained Beau Brindley to represent him. He complains now that Brindley was constitutionally ineffective for a variety of reasons, none of which are compelling.

### 1. Failure to challenge venue

Petitioner starts with Brindley's failure to challenge venue, which is nonsensical. Petitioner was arrested in this district for an attempt to distribute drugs here and he was charged for conspiracy to distribute drugs in this district. Brindley had no ground on which to contest the propriety of charging and trying petitioner in this district.

2. Judicial bias

Next, petitioner alleges judicial bias, but he does not identify what it might have been or how it affected his sentence. Without any explanation of this challenge, there is no reason to consider it.

3. Counsel's failure to challenge reliability of other conspirators

Petitioner argues that his counsel should have challenged the reliability of other participants in the criminal activity, but this too is nonsensical. Petitioner does not explain why bringing such challenges would have improved his chances of a lower sentence; ordinarily, frivolous challenges lead to higher sentences.

4. Counsel's failure to undertake adequate investigation of case

Petitioner says that if his counsel had investigated the case adequately, he could have impeached the adverse testimony given at petitioner's sentencing. This is a puzzling claim because there was no testimony at the sentencing. It is also a claim without any support because petitioner has not explained how Brindley could have countered any adverse

9

testimony.

5. <u>Counsel's failure to object to government's reliance on petitioner's proffer</u>

Petitioner argues that the government violated U.S.S.G. § 1B1.8(b)(1) by giving the proffer information to the probation office for its use in preparing the presentence report and that counsel was ineffective in not challenging the violation. Petitioner raised this issue on his direct appeal, where it was decided against him. He is precluded from raising the issue of the government's alleged violation in this post conviction motion. <u>Varela v. United States</u>, 481 F.3d 932, 935 (7th Cir. 2007) (§ 2255 is not intended to be a substitute for belated appeal; issues raised on direct appeal may not be reconsidered). He is also precluded from using the issue as a reason to attack his counsel's effectiveness by the court of appeals' determination that the use of the proffer information was not a violation of the sentencing guidelines.

6. <u>Counsel's advising petitioner to accept plea agreement without considering effect of proffer</u>

Petitioner contends that if his counsel had told him that the court could consider the statements he made in his proffer, he would not have accepted the plea offer but would have gone to trial or negotiated a more favorable plea agreement. He does not offer any evidence to support this questionable contention or to suggest how his counsel might have negotiated a better agreement. Despite his protestations, it is inconceivable that he would have chosen

trial over the bargain offered him by the government, however inadequate he considers it from his present vantage point. At trial, the government could have called all the people who had participated in the drug distribution, including Hill, who would have testified about her beating. It could have put in evidence of his flight to avoid prosecution and it could have put into evidence petitioner's own statements from the proffer meeting if petitioner's tried to contradict those statements. Instead, under the plea bargain, he pleaded guilty to the two charges with the least exposure, distributing ecstacy and marijuana, while the government dropped the charges of conspiracy and distributing crack cocaine. This is not an outcome about which petitioner can complain.

7. Counsel's misinforming petitioner that he would receive a five-year sentence

Petitioner alleges that Brindley told him he would receive a five-year sentence in a prison camp if he entered a plea of guilty. This allegation is preposterous, given the criminal activity in which petitioner had engaged. It is also undermined by petitioner's statements in court to the effect that no one had told him he would receive a particular sentence.

8. Counsel's failure to object to the court's findings at sentencing

Petitioner seems to think that his counsel was ineffective because he did not object to the court's conclusions at sentencing. Counsel had a full opportunity to present his arguments and objections before the sentencing: he filed a seven-page sentencing memorandum and a nine-page response to the government's sentencing memorandum in

11

which he raised many of the arguments petitioner is raising in this motion. He argued vigorously for his client at sentencing and he took an appeal on petitioner's behalf, at which time, he had an opportunity to raise his objections again. Objecting to the court's findings and conclusions at the sentencing hearing would not have helped his client.

9. Counsel's failures with respect to crack cocaine

Petitioner raises a number of allegations involving the crack cocaine attributed to him at sentencing, including Brindley's alleged failure to contest the value of the cocaine petitioner provided to Hill, his advice to petitioner that he would not be held responsible for crack found in van and his failure to challenge the presentence report's recommendation that petitioner be held responsible for the cocaine he provided to Hill. Petitioner contends that Brindley could have convinced the court that Hill was not a reliable witness and that the crack cocaine was not petitioner's, but instead told petitioner that "it didn't matter." None of these allegations suggest that Brindley was ineffective in his representation of petitioner. It was reasonable for counsel to determine that attacking Hill's credibility was a risky tactic that might have an adverse effect on his client's chances for a lower sentence. Just because petitioner told him repeatedly that Hill's veracity was questionable does not mean that Brindley made the wrong choice when he decided not to pursue that particular line of attack.

Petitioner has no evidence to support his allegation that Brindley told him that he would not be responsible for the cocaine found in the van, that his proffer could not be used against him if he entered a plea of guilty to counts 4 and 5 and that he could not be held

responsible for any crack cocaine if he did not plead guilty to count 3, which charged the distribution of crack cocaine.  Therefore, it is not necessary to consider these claims.  Prewitt v. United States, 83 F.3d 812, 819 (7th Cir. 1996) ("for a[n evidentiary] hearing to be granted, the [§ 2255] petition must be accompanied by a detailed and specific affidavit which shows that the petitioner had actual proof of the allegations going beyond mere unsupported allegations").

In sum, I conclude that petitioner has failed to show that either of his retained counsel gave him constitutionally ineffective assistance.

Under Rule 11 of the Rules Governing Section 2255 Proceedings, the court must issue or deny a certificate of appealability when entering a final order adverse to a defendant. To obtain a certificate of appealability, the applicant must make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); Tennard v. Dretke, 542 U.S. 274, 282 (2004).  This means that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted).  In this case, defendant has not made the necessary showing, so no certificate will issue.  Although the rule allows a court to ask the parties to submit arguments on whether a certificate should issue, it is not necessary to do so in this case because the question is not a close one. Petitioner is free to seek a certificate of appealability from the court of appeals under Fed. R. App. P. 22, but that court will not consider his request unless he first files a notice of

appeal in this court and pays the filing fee for the appeal or obtains leave to proceed in forma pauperis.

ORDER

IT IS ORDERED that petitioner Gregory Bennett's motion for post conviction relief under 28 U.S.C. § 2255 is DENIED. No certificate of appealability shall issue. Defendant may seek a certificate from the court of appeals under Fed. R. App. P. 22, as explained above.

Entered this 4th day of September, 2014.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge